**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| WYATT KEENAN, individually and on behalf of all others similarly situated, | ) | Case No. 1:23-cv-01998- |
| Plaintiff, | ) | |
| v. | ) | |
| CARESOURCE, CORP. and CARESOURCE INDIANA, INC., | ) | |
| Defendants. | ) | |

**NOTICE OF REMOVAL**

Defendants CareSource, Corp. ("CareSource") and CareSource Indiana, Inc. ("CareSource Indiana") (collectively, "Defendants") give notice that Case No. 49D11-2310-CT-040444 now pending in the Marion Superior Court of Marion County, Indiana ("the State Court Action" or "Action") is removed to this Court pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453. Removal of the State Court Action to this Court is proper for the following reasons:

I. JURISDICTION

1. As demonstrated below, this Court has jurisdiction over this Action under the Class Action Fairness Act of 2005 ("CAFA"), because: (1) Plaintiff purports to assert this Action on behalf of more than 100 putative class members; (2) there is minimal diversity between the parties; at least one Plaintiff and one defendant, CareSource, are citizens of different states; and (3) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d).

II. NATURE OF THE CASE

2. Plaintiff Wyatt Keenan ("Plaintiff"), an Indiana resident, filed his Complaint in the Action on October 13, 2023, as *Wyatt Keenan, et al. v. CareSource Corp., CareSource Indiana*

*Inc.* ("Complaint" or "Compl.")

3. Plaintiff alleges that, "on May 31, 2023, the software of one of CareSource's vendors was hacked by a 'bad actor' (the "Data Breach")." Compl., ¶ 4.

4. Plaintiff alleges that the "Data Breach was the product of an intentional criminal act to gain access to the data." Compl., ¶ 33.

5. Plaintiff alleges the "Personal Information stolen in the Data Breach included information such as social security numbers, birth dates, financial information, and full names" (Compl., ¶ 35) and that "Plaintiff is an individual who had his Personal Information compromised in the Data Breach[.]" Compl., ¶ 26.

6. Because of the Data Breach, Plaintiff alleges that Defendants failed to: "(i) adequately protect its customers' Personal Information; (ii) warn customers of its inadequate information security practices; and (iii) effectively secure hardware, data, and information systems through reasonable and effective security procedures." Compl., ¶ 8.

7. Based on these allegations, Plaintiff asserts claims against Defendants for negligence, negligence *per se*, breach of confidence, invasion of privacy, breach of contract to which Plaintiff and class members were intended third party beneficiaries, breach of implied contract, unjust enrichment, breach of fiduciary duty, and declaratory judgment.

8. Plaintiff seeks monetary damages, punitive damages, injunctive relief, and declaratory relief on behalf of himself and other putative class members collectively valued at more than $5,000,000. Compl., ¶¶ 9, 40, 79(s), 79(u), 99, 104, 120, 127, 135, 141, 163, 169, 182-190.

9. Service was made on October 19, 2023.

10. Therefore, this Notice of Removal is filed within the time prescribed by 28 U.S.C.

§ 1446(b)(1).

11. Defendants have not yet responded to the Complaint in this Action.

## III. NO ADMISSION

12. Defendants deny any liability in this case, both as to Plaintiff's individual claims and as to the claims of the members of the proposed class or classes. In alleging the amount in controversy and other matters in this removal pleading, Defendants do not concede any liability, damages, or any other claims or defenses. Defendants are only stating what the stakes of litigation could be under Plaintiff's allegations. *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 449 (7th Cir. 2005) (a removing party's "demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks").

## IV. VENUE IS PROPER IN THIS COURT

13. Pursuant to 28 U.S.C. § 1441(a), venue is proper in this Court because the Action was filed in the Marion Superior Court, a court within the Southern District of Indiana.

## V. THIS COURT HAS JURISDICTION UNDER CAFA

14. CAFA vests federal courts with original jurisdiction over a putative "class action" that meets certain jurisdictional requirements. CAFA defines the term "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). As a threshold matter, this Action qualifies as a putative "class action" because Plaintiff seeks to certify a class of "thousands" defined to include "[a]ll natural persons residing in Indiana whose Personal Information was maintained on CareSource's systems that were compromised as a result of the breach announced by CareSource on August 24,

2023." Compl., ¶ 78. Plaintiff brings this Action pursuant to Indiana Rule of Trial Procedure 23, which is analogous to Federal Rule of Civil Procedure 23. *See* Ind. R. Trial. Pr. 23; *see also Associated Med. Networks, Ltd. v. Lewis*, 824 N.E.2d 679, 685 (Ind. 2005); *Hefty v. All Other Members of the Certified Settlement Class*, 680 N.E.2d 843, 848 (Ind. 1997).

15. In enacting CAFA, Congress unambiguously signaled its intent "to expand substantially federal court jurisdiction over class actions." *Hart v. FedEx Ground Package Sys.,* 457 F.3d 675, 681 (7th Cir. 2006) (quoting S. Rep. 14, 109th Cong. 1st Sess. 43 (2005)). "Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." Id.

16. Federal jurisdiction pursuant to CAFA does not depend "on a high degree of certainty that jurisdictional facts exist," and a defendant's "jurisdictional allegations control unless it is legally impossible for them to be true." *Betzner v. Boeing Co.,* 910 F.3d 1010, 1014 (7th Cir. 2018) (internal quotation marks and citation omitted). "To the extent there is a presumption against removal in ordinary diversity cases, it does not extend to cases in which there is a contrary congressional policy favoring removal." *Hammer v. United States HHS*, 905 F.3d 517, 526 (7th Cir. 2018) (citation omitted)

17. After a defendant establishes that the jurisdictional requirements of CAFA are met, "the party seeking remand has the burden to establish any exception to CAFA jurisdiction." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 618 (7th Cir. 2012) (citations omitted).

18. Removal of a class action under CAFA is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from the state of any defendant; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. *Johnson v.*

*Diakon Logistics, Inc.,* 44 F.4th 1048, 1050 (7th Cir. 2022) (citing 28 U.S.C. §§ 1332(d)(2), (d)(2)(A), (d)(5)(B)). For purposes of CAFA, minimal diversity is satisfied when one plaintiff is diverse from one defendant. 28 U.S.C. § 1332(d).

19. Because all three requirements are satisfied here, removal is appropriate.

A. Plaintiffs Assert This Action on Behalf of More Than 100 Putative Class Members

20. Plaintiff alleges that he "is informed and believes" that "there are thousands of members of the Class." Compl., ¶ 78. Therefore, there are more than 100 members of the proposed class. *Roppo v. Travelers Commer. Ins. Co.,* 869 F.3d 568, 581 (7th Cir. 2017) (holding that defendant "may rely on the estimate of the class number set forth in the complaint" to meet its burden of proof with respect to the number of plaintiffs in a class action under CAFA); *Hendricks v. OppenheimerFunds, Inc.,* No. 10-3162, 2010 U.S. Dist. LEXIS 96373, at *10 (C.D. Ill. Sep. 15, 2010) (noting "[d]efendants may rely on [plaintiff's] allegations in the Complaint as evidence" to meet jurisdictional requirements).

B. There is Sufficient Diversity Among Plaintiffs and Defendants

21. CAFA requires only that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Courts consider the citizenship of all putative class members, both named and unnamed, as of the date of filing of the complaint. Id. at §1332(d)(1)(D), (d)(7).

22. A corporation is deemed a citizen of any state where it is incorporated and a citizen of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Smoot v. Mazda Motors of Am., Inc.*, 469 F.3d 675, 676 (7th Cir. 2006) (a corporation has two places of citizenship: where it is incorporated and where it has its principal place of business).

23. Plaintiff alleges that he is a citizen of Indiana. Compl., ¶ 13.

24. Plaintiff alleges that CareSource is an Ohio corporation that maintains its principal office at 230 N. Main Street, Dayton, Ohio 45402. Compl., ¶ 21.

25. Therefore, CareSource is a citizen of Ohio for purposes of determining CAFA jurisdiction.

26. Because there is minimal diversity between Plaintiff and CareSource, CAFA's minimal diversity requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2)(A).

C. The Amount in Controversy Exceeds Five Million Dollars

27. An action is removable under CAFA when "the amount in controversy exceeds the sum or value of $5,000,000 . . . ." 28 U.S.C. § 1332(d)(2). To determine whether the amount in controversy exceeds the sum or value of $5,000,000, "the claims of the individual class members shall be aggregated . . . ." *Id.* § 1332(d)(6).

28. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89, 135 S. Ct. 547 (2014) (emphasis added). If the amount in controversy is then challenged by the plaintiff, the Court applies a preponderance of the evidence test to determine if removal is proper. *Id.; accord: Oshana v. Coca-Cola Co.,* 472 F.3d 506, 511 (7th Cir. 2006) ("In such a case [where plaintiffs provide little evidence about the value of their claims], a good-faith estimate of the stakes is acceptable if it is plausible and supported by a preponderance of the evidence."). A removing party then "must establish any disputed aspect of diversity jurisdiction by offering 'evidence which proves to a reasonable probability that jurisdiction exists.'" *Smith v. Am. Gen. Life & Acc. Ins. Co.,* 337 F.3d 888, 892 (7th Cir. 2003) (citation omitted). "This burden thus 'is a pleading requirement, not a demand for proof.'" *Blomberg v. Serv. Corp. Int'l,* 639 F.3d 761, 763 (7th Cir. 2011) (quoting *Spivey v. Vertrue,* 528

F.3d 982, 986 (7th Cir. 2008)).

29. The amount in controversy is measured by the value of the object of the litigation. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). "[A] way in which the requirement of the statutory minimum amount in controversy can be satisfied in an injunctive case is by showing that the injunction would force the defendant to forgo a benefit to him that is worth more than the threshold amount specified in the diversity statute . . . ." *In Re Brand Name Prescription Drugs Antitrust Litig.,* 123 F.3d 599, 610 (7th Cir. 1997). The Seventh Circuit considers the value of injunctive relief when determining whether a case meets the $5,000,000 jurisdictional threshold under CAFA. *Keeling v. Esurance Ins. Co.,* 660 F.3d 273, 274 (7th Cir. 2011) (holding that the costs to the defendant to comply with the plaintiff's requested injunctive relief should be considered in determining the "amount in controversy"); *Supernova Sys. v. Great Am. Broadband, Inc.,* No. 1:09-cv-016, 2009 U.S. Dist. LEXIS 52931, at *9 (N.D. Ind. June 22, 2009) (finding that the defendant provided "competent proof" that the value of the injunction, as well as rescission of the contract, easily exceeded the statutory minimum); *Tropp v. W.-Southern Life Ins. Co.,* 381 F.3d 591 (7th Cir. 2004) ("[B]ut because the cost a defendant incurs in complying with injunctive relief is a legitimate consideration in a jurisdictional inquiry, . . . .we are satisfied that Western-Southern's affidavits establish that the costs of implementing the injunctive relief requested by Tropp in the original complaint would exceed $75,000.") (internal citations omitted).

30. The value of the injunctive or declaratory relief must necessarily be estimated and may be assessed from either party's viewpoint. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006) (noting that in equitable relief cases, the amount in controversy may be "what a judgment would be worth to the plaintiff, or what compliance with an injunction would cost the defendant"). Therefore, as the Seventh Circuit explained in *Keeling*, courts assessing the

amount in controversy in lawsuits seeking prospective equitable relief must consider, among other things, the cost to "comply with an injunction," "[i]f the class is right." 660 F.3d at 274. For example, if an insurance company would be required either to stop charging a premium or change the terms of its policy so that policyholders receive indemnity more frequently, the cost of this "prospective relief cannot be ignored in the calculation of the amount in controversy." Id. The court of appeals also reminded courts and litigants of the "legally impossible" standard to defeat CAFA jurisdiction over amount in controversy, granting a petition for leave to appeal and summarily reversing the district court where an award greater than the $5 million statutory threshold was "[i]mprobable, perhaps, but not impossible." *Id.* at 275.

31. Plaintiff alleges that he "is informed and believes" that "there are thousands of members of the Class." Compl., ¶ 78. Plaintiffs further purport to seek certification of a class of "[a]ll natural persons residing in Indiana whose Personal Information was maintained on CareSource's systems that were compromised as a result of the breach announced by CareSource on August 24, 2023." *Id.*

32. Plaintiff seeks damages from Defendants, on behalf of himself and the "thousands" of putative class members, including damages for:

> ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen Personal Information; illegal sale of the compromised Personal Information on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the Personal Information; lost value of access to their Personal Information permitted by CareSource; the amount of the actuarial

> present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of CareSource's Data Breach; and lost benefit of their bargains and overcharges for services or products.

Compl., ¶ 169. Plaintiff's allegation that the class contains thousands or more members means that it would take only a relatively nominal amount of the claimed damages to meet the necessary threshold for removal. CareSource has more than three hundred fifty thousand members in Indiana. Given the broad scope of damages sought, it is likely that Plaintiff seeks more than nominal damages for each putative class member. Indeed, there are numerous similar class actions that have been filed against CareSource by its members alleging similar damages resulting from the Data Breach. In those cases, the plaintiffs have alleged minimum damages totaling more than $5,000,000. *Dwayne Cooper vs. CareSource*, S.D. Ohio No: 3:23-cv-256, Doc. 1, ¶ 11 (alleging that the amount in controversy exceeds $5 million); *Thomas Campo vs. CareSource*, S.D. Ohio No: 3-23-cv-259, Doc. #1, ¶ 17 (same); *David Tzikas on behalf of Minor Child D.T. v. CareSource*, S.D. Ohio No: 3:23-cv-260, Filing 1, ¶ 21 (same); *Tiffany Stevens v. CareSource,* S.D. Ohio No. 3:23-cv-263, Filing No. 1, ¶ 19 (same); *Channon Willis, individually as next friend of C.M., a Minor Child v. CareSource*, S.D. Ohio No. 3:23-cv-264, Docket no. 1, ¶ 15 (same); *Rachel Embert, on behalf of herself, her minor child, KG v. CareSource*, S.D. Ohio No. 3:23-cv-270, ECF No. 1, ¶ 17 (same); *Patsie Eslinger v. CareSource*, S.D. Ohio No. 3:23-cv-271, ECF 1, ¶ 14 (same); *Amanda Cameron, Catherine Custer, Kyle Custer v. CareSource*, S.D. Ohio No. 3:23-cv-274, Doc. No. 1, PageID# 7, ¶ 20 (same); *Todd Higham, on behalf of minor child A.H., individually and on behalf of all other similarly situated v. CareSource*, S.D. Ohio No. 3:23-CV-00276, Doc. No. 1, PageID# 4, ¶ 15 (same)[1]; *Deidra Clay, individually and on behalf of all others*

[1] On October 5, 2023, these cases were consolidated. Order Granting Joint Motion to Consolidate, *Cooper v. CareSource,* S.D. Ohio No. 3:23-cv-256, Doc. No. 16.

*similarly situated v. CareSource*, N.D. Ohio No. 1:23-CV-01868, Doc. No. 1, PageID# 4, ¶ 12; *Esther Moore, individually and on behalf of all other similarly situated v. CareSource*, S.D. Ohio No. 3:23-cv-00293, Doc. No. 1, PageID# 4, ¶ 15 (same).[2]

33. Plaintiff also seeks punitive damages and attorneys' fees, which further add to the amount in controversy. *Roppo*, 869 F.3d at 582 (stating that claims for punitive damages "factor into the amount-in-controversy calculation"); *El v. AmeriCredit Fin. Servs.,* 710 F.3d 748, 753 (7th Cir. 2013) ("[W]hen [attorneys' fees] are sought as part of any underlying claim . . . .they are considered part of the amount in controversy.").

34. In addition, Plaintiff seeks equitable relief ordering that Defendants:

a. Engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

b. Engage third-party security auditors and internal personnel to run automated security monitoring;

c. Audit, test, and train their security personnel regarding any new or modified procedures;

d. Segment consumer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised,

[2] On October 18, 2023, the Judicial Panel on Multidistrict Litigation entered a conditional transfer order transferring these cases to the Multidistrict Litigation, which is currently pending before Judge Allison D. Burroughs of the U.S. District Court for Massachusetts. On October 26, 2023, these cases were officially transferred to the Multidistrict Litigation. *In Re: MOVEit Customer Data Security Breach Litigation*, MDL No. 3083, Document 4, Conditional Transfer Order (CTO-6).

unauthorized third parties cannot gain access to other portions of Defendants' systems;

e. Purge, delete, and destroy in a reasonably secure manner consumer data not necessary for their provisions of services;

f. Conduct regular database scanning; and

g. Routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach. Compl., ¶¶ 183-190.

35. Here, where Plaintiff seeks to represent proposed classes of thousands of individuals whose data was allegedly breached, the CAFA amount in controversy is easily satisfied. *See Blomberg*, 639 F.3d at 763-64 (holding complaint filed in Virginia federal district court case that alleged CAFA jurisdiction was satisfied, made similar allegations against the same defendant and had identical proposed class definition was "useful" evidence that plausibly showed amount in controversy exceeded $5,000,000); *Composite Co. v. Am. Int'l Grp., Inc.,* 988 F. Supp. 2d 61, 74-75 (D. Mass. 2013) (holding defendants showed CAFA's amount in controversy requirement was satisfied by citing South Carolina federal district court complaint "filed by the same counsel against the same defendants" that "assert[ed] similar claims predicated upon similar alleged conduct [and] contain[ed] an explicit amount-in-controversy estimate exceeding $5 million"); *Brill*, 427 F.3d at 449 (removal may be based on what Plaintiffs are "claiming" and "not whether plaintiff is likely to win or be awarded everything he seeks"). Assuming the truth of the allegations in the Complaint, there is more than $5,000,000 in controversy, as required for removal by 28 U.S.C. § 1332(d)(2). *Blomberg*, 639 F.3d at 764 ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000 . . . the case belongs in federal court

unless it is legally impossible for the plaintiff to recover that much.") (emphasis added).

36. Therefore, removal of this action is proper under 28 U.S.C. §§ 1441, 1446 and 1453 because the requirements for CAFA jurisdiction under Section 1332(d) are satisfied.

VI. PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED

37. In compliance with 28 U.S.C. § 1446(a), this Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

38. Pursuant to 28 U.S.C. § 1446(a) and S.D. Ind. L.R 81-2, a copy of the state court record, including the docket sheet, all pleadings, motions, orders, and all other filings, are attached to this Notice of Removal as **Exhibit A** and are incorporated by reference here. Undersigned verifies that a complete copy of all filings in the State Court Action are attached hereto as Exhibit A. The state court record is complete as of the date of filing of this Notice of Removal; no other pleadings or orders have been entered regarding any of the papers served or filed in the Action.

39. Pursuant to S.D. Ind. L.R 81-2, a copy of the Complaint is attached separately as **Exhibit B** and incorporated by reference herein, and there are no motions that remain pending in the State Court Action.

40. Both Defendants consent to removal.

41. This Notice of Removal is timely, because it was filed within 30 days of service. *See* 28 U.S.C. § 1446(b)(1). Defendants were served with the Summons and Complaint on October 19, 2023.

42. Pursuant to 28 U.S.C. § 1446(d), promptly upon filing of this Notice of Removal, copies will be sent to Plaintiff's counsel and filed with the Clerk of the Court in the Marion Superior Court. Defendants will also file proof of filing this Notice of Removal with the Clerk of the Marion Superior Court and proof of service on all adverse parties. A Notice of Removal and a copy of

this Notice of Removal from State Court will be filed with the Marion County Superior Court, State of Indiana as required by 28 U.S.C. § 1446(d). Copies of the same will be served upon all counsel of record upon the filing of this Notice.

43. Defendants reserve the right to amend or supplement this Notice of Removal and reserve all rights and defenses, including those available under Federal Rule of Civil Procedure 12. In the event Plaintiff files a motion to remand or the Court considers remand *sua sponte*, Defendants request the opportunity to submit additional argument and evidence in support of removal. If questions arise about this removal, Defendants respectfully request the opportunity to present briefing and oral argument in support of removal, and to conduct jurisdictional discovery if needed.

44. By filing this Notice of Removal, Defendants do not waive, either expressly or implicitly, their rights to assert any defense or other objection that it could have asserted in the State Court Action, including without limitation those related to personal jurisdiction, ineffective service of process, inconvenience of the forum, improper venue, contractual right to demand arbitration, preemption, or lack of standing.

WHEREFORE, Defendants, CareSource Corp. and CareSource Indiana, Inc., remove this case from the Marion Superior Court to the United States District Court for the Southern District of Indiana, Indianapolis Division.

Dated: November 6, 2023

Respectfully submitted,

*Kristopher N. Kazmierczak*

Sally Franklin Zweig, No. 11367-49
Kristopher N. Kazmierczak, No. 19430-49
STOLL KEENON OGDEN PLLC
334 North Senate Avenue
Indianapolis, IN 46204
Office: (317) 464-1100; Fax: (317) 464-1111
sally.zweig@skofirm.com

kkaz@skofirm.com

Erin E. Rhinehart (*pro hac vice forthcoming*)
Jason W. Palmer (*pro hac vice forthcoming*)
Raika N. Casey (*pro hac vice forthcoming*)
FARUKI PLL
110 North Main Street, Suite 1600
Dayton, OH 45402
Phone: (937) 227-3714; Fax: (937) 227-3717
erhinehart@ficlaw.com
jpalmer@ficlaw.com
rcasey@ficlaw.com

*Counsel for Defendants, CareSource Corp. and CareSource Indiana, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on **November 6, 2023**, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's ECF. Parties may access this filing through the Court's system.

| | |
|---|---|
| Jacob R. Cox<br>COX LAW OFFICE<br>*Counsel for Plaintiff* | jcox@coxlaw.com |
| Jason A. Shartzer<br>SHARTZER LAW FIRM, LLC<br>*Counsel for Plaintiff* | jshartzer@shartzerlaw.com |

I hereby further certify that on **November 6, 2023**, I served a courtesy copy of the foregoing ***via e-mail*** upon the following persons:

| | |
|---|---|
| Blake G. Abbott<br>Paul J. Doolittle<br>POULIN WILLEY ANASTOPOULO, LLC<br>*Counsel for Plaintiff* | pauld@akimlawfirm.com<br>blake@akimlawfirm.com |

*Kristopher N. Kazmierczak*
Kristopher N. Kazmierczak

STOLL KEENON OGDEN PLLC
334 North Senate Avenue
Indianapolis, Indiana 46204
Office: (317) 464-1100; Fax: (317) 464-1111